J-A30007-15 & J-A30008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: E.P., III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M., MOTHER | |
| | No. 1293 EDA 2015 |

Appeal from the Order Entered March 31, 2015
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s): 0093-2013

| | |
|---|---|
| IN RE: ADOPTION OF: E.P., III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.P., JR., FATHER | |
| | No. 1247 EDA 2015 |

Appeal from the Order Entered March 31, 2015
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s): 0093-2013

BEFORE: GANTMAN, P.J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 08, 2015**

_____

[*] Former Justice specially assigned to the Superior Court.

Appellants, A.M. (Mother) and E.P., Jr., (Father) appeal from the March 31, 2015 orders involuntarily terminating their parental rights to their son, E.P., III, (Child).[1]  After careful review, we affirm.

The orphans' court set forth detailed and extensive findings of fact in conjunction with the March 31, 2015 orders entered in this matter.  **See** Orphans' Court Opinion, 3/31/15, at Findings of Fact #39-298.  We summarize the pertinent findings of fact as follows.  E.P., III was born in December 2011, with methadone in his system.  Orphans' Court Opinion, 3/31/15, at Finding of Fact #54.  E.P., III suffered from drug withdrawal, and, as a result, he remained in the hospital for treatment until February 17, 2012.[2]  **Id.** at #88(e), 95.  Upon discharge, E.P., III was placed in foster care.  **Id.** at #95.  He was adjudicated dependent on April 3, 2012.  **Id.** at #130.  E.P., III has remained with the same foster parents during his entire dependency.  **Id.** at #276.  They are an adoptive resource, and E.P., III is thriving in their care.  **Id.** at #277, 280.

The record reveals that Mother has struggled with drug addiction since at least 2009, when her oldest daughter tested positive for benzodiazepines

---

[1] This Court hereby consolidates these appeals *sua sponte*.  **See generally** Pa.R.A.P. 513.

[2] At the time of E.P., III's birth, through his discharge from the hospital, Mother and Father resided in the home of E.P., Sr., (Paternal Grandfather) and D.P. (Step-Grandmother).  Orphans' Court Opinion, 3/31/15, at Finding of Fact # 44.

and marijuana at birth. *Id.* at #159. In 2010, Mother gave birth to another daughter, who tested positive for cocaine at birth.[3] *Id.* at #160. Mother testified that, at the time she learned of her pregnancy with E.P., III, she was taking suboxone, which she purchased illegally "off the street." *Id.* at #47, 54(a). By the time of E.P., III's birth, Mother was taking prescribed methadone. *Id.* at #48. During E.P., III's life, Mother enrolled in substance abuse programs, but she never completed any program. *Id.* at #162.

At the time of E.P., III's adjudication, Mother was on probation for the crime of retail theft. N.T., 2/11/15, at 125-126. She was arrested during E.P., III's adjudication hearing on April 3, 2012, due to a bench warrant that was issued for the probation violation of failure to report. *Id.* Mother was incarcerated until July 29, 2012, during which E.P., III, then no more than seven months old, visited her three times. *Id.* at 32, 126. In May 2013, Mother was incarcerated again for a new probation violation based on conduct similar to that which precipitated the 2012 revocation. *Id.* at 127. She remained incarcerated until August 8, 2013, during which she did not request visits with E.P., III. *Id.* at 128. Mother was incarcerated again in January 2014, for a period of time unspecified in the record. *Id.* at 21-22.

---

[3] Father is the natural parent of both female children. At the time of the subject proceedings, Paternal Grandfather and Step-Grandmother had legal and physical custody of the female children. Orphans' Court Opinion, 3/31/15, at Finding of Fact #70.

Mother acknowledged that, when not incarcerated, she did not regularly attend visits with E.P., III. N.T., 2/11/15, at 132. From August 2012, to February 2013, Mother attended six out of fourteen scheduled visits with E.P., III. Orphans' Court Opinion, 3/31/15, at Finding of Fact #182. From March 2013 to July 2013, Mother attended none of the eleven scheduled visits with E.P., III, although she was incarcerated again in May 2013. *Id.* at #183. From August 2013 to March 2014, Mother attended none of the 17 scheduled visits with E.P., III. *Id.* at #184. From April 2014 to June 2014, Mother attended one of seven scheduled visits with E.P., III. *Id.* at #185.

With respect to Father, the record reveals that he was incarcerated several days after E.P., III's placement in February 2012. *Id.* at #101. Father remained incarcerated until May 2013. *Id.* at #204. Father never contacted E.P., III by letters, cards, or gifts while incarcerated. *Id.* at #216. Following his release from prison, Father did not contact CYS until October 2013, at which time he discussed his support of E.P., III's adoption by alleged paternal relatives, R.B. and J.M., husband and wife. *Id.* at #207, 212. Father has never visited with E.P., III even though visits were scheduled, and notices of the visits were sent by letter to him. *Id.* at #213-214.

On August 14, 2013, the Delaware County Children and Youth Services (CYS) filed petitions for the involuntary termination of Mother's and Father's

parental rights to E.P., III pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[4]  A hearing on the petitions occurred on February 11, 2015, during which CYS presented the testimony of its caseworker, Sara English. In addition, CYS admitted into evidence transcripts from the hearings on September 23, 2014, October 2, 2014, November 20, 2014, and December 11, 2014.[5]  *See* N.T., 2/11/15, at 10-14.  Mother testified on her own behalf.  Father did not appear for the termination hearing, although his counsel participated.

On March 31, 2015, the orphans' court granted CYS's petitions for the involuntary termination of Mother's and Father's parental rights to E.P., III. On April 28, 2015, Mother and Father timely filed separate notices of

---

[4] The orphans' court found that, on October 7, 2013, CYS  learned that R.B. and J.M. were interested in adopting E.P., III when M.P., Child's paternal great-uncle, told CYS that his son-in-law's uncle was interested in adopting a child.  Orphans' Court Opinion, 5/28/15, at 26.  It is unclear from the record how, if at all, R.B. and J.M. are related to E.P., III.

Thereafter, prior to the termination hearing, on March 17, 2014, Father executed a consent to adoption.  On March 28, 2014, Mother executed a consent to adoption.  Mother and Father executed the consents to adoption in anticipation of R.B. and J.M. adopting E.P., III.  On May 7, 2014, R.B. and J.M. filed a petition for adoption and a petition to confirm consents to adoption.  As discussed *supra*, following hearings, on January 16, 2015, the orphans' court denied the petitions filed by R.B. and J.M.

[5] The hearings were on the petition for adoption and the petition to confirm consents to adoption, filed by R.B. and J.M.

appeal.[6]  On May 28, 2015, the orphans' court filed an opinion pursuant to

Pa.R.A.P. 1925(a).

On appeal, Mother presents the following issues for our review.

> 1. Whether the [orphans'] court erred and/or abused its discretion in finding that CYS met its burden of proof by clear and convincing evidence that the parental rights of [M]other should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8)?

> 2. Whether the [orphans'] court erred and/or abused its discretion in finding that CYS met its burden of proof by clear and convincing evidence that it provided reasonable services to [M]other sufficient to timely reunify [M]other with her child?

> 3. Whether the [orphans'] court erred and/or abused its discretion in finding that CYS met its burden of proof by clear and convincing evidence that terminating the parental rights of [M]other would

---

[6] Mother and Father did not file concise statements of errors complained of on appeal concurrently with their notices of appeal in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b).  By orders dated April 28, 2015, and April 30, 2015, the orphans' court directed Father and Mother, respectively, to file concise statements within 21 days.  By orders dated May 7, 2015, the orphans' court amended its previous orders by directing Mother and Father to file concise statements by May 11, 2015, and the parties complied. Because no party claims prejudice as a result of Mother's and Father's procedural violation, we will not quash or dismiss their appeals.  ***See In re K.T.E.L.***, 983 A.2d 745 (Pa. Super. 2009); ***Cf. J.P. v. S.P.***, 991 A.2d 904, 908 (Pa. Super. 2010) (holding that appellant waived all issues by failing to file a concise statement of errors complained of on appeal when directed by the trial court).

best meet the needs and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(b)?

4. Whether the [orphans'] [c]ourt erred in not dismissing [CYS's] [p]etition to [t]erminate the parental [r]ights of [M]other for failing to be carried out promptly in accordance with Pa.R.C.P. 1915.4 and [Pa.O.C.R.] 15.4-15.6?

5. Whether the [orphans'] court erred and/or abused its discretion in overruling [Mother]'s [o]bjections as to hearsay regarding the submission of Dr. Madero's reports without Dr. Madero testifying, and thus not allowing [Mother] the opportunity to cross[-]examine Dr. Madero regarding her opinions?

6. Whether the [orphans'] court erred and/or abused its discretion in putting the burden on the mother to subpoena or call as a witness the CYS' expert, Dr. Madero[,] to testify?

7. Whether the [orphans'] court erred and/or abused its discretion by failing to assess the credibility of [J.M] and [R.B.] before coming to the [c]ourt's determination to terminate parental rights?

8. Whether despite 23 Pa.C.S.A. § 2511(b), [M]other was incorrectly precluded from producing any remedial evidence following the filing of the [p]etition for [i]nvoluntary [t]ermination of [p]arental rights that was filed pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8)?

9. Whether the [orphans'] court's decision to terminate the [p]arental rights of [M]other was not in the best interest of the Child?

10. Whether the [orphans'] court erred and/or abused its discretion in coming to the conclusion that CYS met its burden under the Kinship Car[e] Act?

11. Whether the [orphans'] court erred and/or abused its discretion in finding that CYS met its burden of proof by clear and convincing evidence

- 7 -

that it provided reasonable services to [M]other when CYS['s] goal all along was not to reunify [M]other with [C]hild, but was to place [C]hild with a foster parent that CYS wanted to adopt [C]hild?

12. Whether the [orphans'] court erred and/or abused its discretion in denying [R.B.] and [J.M.]'s [p]etition to confirm [c]onsent of the biological parents to the adoption of [C]hild?

13. Whether the [orphans'] court erred and/or abused its discretion in finding that CYS had the basis to remove [C]hild from [M]other's custody?

Mother's Brief at 4-5.[7]

On appeal, Father presents the following issues for our review.

I. Whether the [orphans'] court erred in terminating parental rights of [Father], based on the lack of clear and convincing evidence and failure to consider factors going to the best interest of the child[?]

II. Whether the [orphans'] court erred in determining that [CYS] met the criteria of the Kinship Care Program Act pursuant to 62 P.S. [§] 1303[?]

III. Whether the [orphans'] court erred in not accepting [ ] [F]ather's consent to voluntarily terminate and to allow adoption by proposed paternal relatives[?]

IV. Whether the [orphans'] court erred in not granting [ ] [F]ather's petition to dismiss termination of parental rights petition due to significant delays from date of filing, 8/14/13, to date of hearing, 2/13/15[?]

_____

[7] In her statement of questions involved in her brief, Mother states that questions five and six will not be addressed on appeal and are withdrawn. *See* Mother's Brief at 4. Therefore, we do not review them.

Father's Brief at 4.

We consider Mother's and Father's issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and

- 9 -

status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude that the orphans' court properly terminated Mother's parental rights pursuant to Section 2511(a)(1) and (b), which provide as follows.[8]

**§ 2511. Grounds for involuntary termination**

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

…

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary

---

[8] This Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights*. In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Therefore, in light of our disposition as to Section 2511(a)(1), we need not consider Mother's arguments with respect to Section 2511(a)(2), (5), and (8).

consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b). In addition, the orphans' court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). *Id.*, quoting ***In re Adoption of Charles E.D.M.***, 708 A.2d 88, 92 (Pa. 1998).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." ***In re B.,N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005), *quoting* ***In re C.M.S.***, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." ***Id.*** (citation omitted). Notably, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a

relationship" with his or her child. ***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012) (citation omitted).

> With respect to Section 2511(b), the requisite analysis is as follows.

> > Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id***. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. ***Id***. at 63.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010).

We begin with Mother's appeal. We observe that she has failed to divide the argument section of her brief "into as many parts as there are questions to be argued" in contravention of Pa.R.A.P. 2119(a). As such, Mother notes that the first argument in her brief encompasses her first, third, eighth, ninth, and thirteenth questions presented involving whether the orphans' court abused its discretion or erred in terminating her parental rights. With respect to Section 2511(a)(1), Mother argues that her conduct does not warrant termination because, although incarcerated within six months immediately preceding the filing of the petition, she was attempting

to have visits with E.P., III. Mother's Brief at 16. In addition, Mother baldly asserts that, upon her release from prison, she "reached out to her case worker…." *Id.* Upon review, the testimonial evidence belies Mother's assertions.

In its Rule 1925(a) opinion, the orphans' court explained its decision to terminate Mother's parental rights pursuant to Section 2511(a). The orphans' court found that, after receiving the referral from the hospital at the time of E.P., III's birth, CYS could not find Mother after multiple attempts to contact her. Orphans' Court Opinion, 5/28/15, at 73; *see also* Orphans' Court Opinion, 3/31/15, at Findings of Fact #58-69, 71-75. On February 7, 2012, two months after E.P., III's birth, the hospital informed CYS that Mother had not recently visited E.P., III, and it inquired of CYS "how the Child could go home if no one was coming to the hospital." Orphans' Court Opinion, 5/28/15, at 73; *see also* Orphans' Court Opinion, 3/31/15, at Finding of Fact #74. On the same date, February 7, 2012, CYS met Mother for the first time at Paternal Grandfather's home. Orphans' Court Opinion, 5/28/15, at 73; *see also* Orphans' Court Opinion, 3/31/15, at Finding of Fact #73. The orphans' court recounted the pertinent facts as follows.

> [T]he [r]ecord is replete with Mother's repeated failure to do what was necessary to be reunited with [E.P., III]…. Although Mother knew she had to attend the classes at the hospital for [E.P., III]'s discharge, Mother failed to do so. Mother repeatedly ignored the numerous letters sent to her by CYS

asking her to meet with them to discuss case planning and relative resources. Although Mother initially stated that she never received any letters from CYS, Mother was forced to admit that she received some of the letters because she received letters all of the time and that her drug use affected her memory. CYS repeatedly tried to meet with Mother by going to her home, but Mother was hardly there.

Mother admitted that over the past three years, she met with her CYS caseworker five times. From June 2012 to February 2013, Mother participated in case planning sporadically…. Mother has never offered herself as a resource for [E.P., III]. From February 2013 to June 2013, Mother was not involved with CYS…. Mother admitted to not attending the permanency review hearings even though she had notice of them. In addition, Mother admitted that she was not compliant with the terms and conditions of her probation….

Mother was not even capable of attending visits with … [E.P., III] …. Beginning [i]n June 2012, Mother visited with [E.P., III] while in jail three times. From August 2012 to June 2014, Mother attended seven out of [4]9 scheduled visits with [E.P., III]. Mother did not provide any explanation of why she did not attend the visits until October 2014. Mother, in October 2014, explained that the visits with [E.P., III] were painful for **her**.

Orphans' Court Opinion, 5/28/15, at 74-76 (internal citations omitted; emphasis in original).

In addition, the orphans' court recited the following record evidence of Mother's failure to complete a substance abuse treatment program.

As of March 7, 2013, Mother was discharged from her substance abuse treatment program at the Recovery Center because she failed to follow the recommendations. CYS had numerous conversations

- 14 -

with Mother about enrolling into in-patient programs. Mother would enroll in these programs, but never successfully completed any program. Although Mother allegedly enrolled in a substance abuse treatment program in October 2013, Mother never completed this program because she was placed in jail in January 2014…. Mother failed to provide the [orphans'] [c]ourt with any documentation that she successfully completed any drug rehabilitation program and[,] therefore, the [orphans'] [c]ourt cannot state that Mother is no longer an active illegal drug user.

*Id.* at 74 (citations to record omitted).

Indeed, on cross-examination by counsel for CYS, Mother acknowledged that she continued to use illegal drugs during E.P., III's dependency as follows.

> Q. Now there were a couple of [times] why you were incarcerated because of testing positive, isn't that right?
>
> A. I admitted that I tested positive, yes.
>
> Q. So when you are saying you were trying [to perform your parental duties to E.P., III], you were not in compliance with probation, you were still using substances. You were not able to complete a substance abuse treatment program successfully. You weren't able to do any of that and you were visiting [E.P., III] sporadically?
>
> A. I couldn't complete the program because I was incarcerated. That was the only reason for me leaving my program. **And no I wasn't doing everything that I was told, but I was also an addict who was struggling to recover.**

*Id.* at 133-134 (emphasis added).

- 15 -

After careful review, we conclude the orphans' court's factual findings are supported by the record evidence. In sum, E.P., III was age four at the time of the termination hearing. The record evidence detailed above overwhelmingly demonstrates that, for the entirety of E.P., III's life, Mother has failed to perform her parental duties to E.P., III. Mother failed to cooperate with CYS during the history of this case. In addition, Mother violated her probation, which resulted in three separate incarcerations during the history of this case. There is no record evidence that Mother made any attempt to maintain a parent-child relationship with E.P., III while incarcerated. When not incarcerated, Mother failed to attend a sufficient number of visits with E.P., III, attending only seven out of 49 scheduled visits between August 2012, when she was released from prison, to June 2014.

As such, the evidence, at best, reflects that Mother had "merely [a] passive interest in the development of" E.P., III, which, as this Court has explained, is not the performance of parental duties. **B.,N.M.**, **supra** at 855. The crux of Mother's explanation for her failure in this regard is that she was "an addict who was struggling to recover." N.T., 5/28/15, at 134. Therefore, the testimonial evidence supports the orphans' court's determination that Mother's conduct warranted termination pursuant to Section 2511(a)(1) because she has failed to perform her parental duties far in excess of the statutory six month period. Therefore, we discern no abuse

of discretion in the orphans' court's decision to terminate Mother's parental rights pursuant to Section 2511(a)(1).

With respect to Section 2511(b), Mother argues simply that, by terminating her parental rights, E.P., III will not know his older sisters and extended relatives. **See** Mother's Brief at 18-19. Mother's argument is flawed because sibling and other relationships with extended relatives are not a part of the Section 2511(b) analysis. Rather, as noted above, the requisite analysis involves discerning, in part, the "nature and status of the parent-child bond" and the "effect on the child of permanently severing that bond." **See J.M.**, **supra**.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

**In re Adoption of C.D.R.**, 111 A.3d 1212, 1219 (Pa. Super. 2015), *quoting* **In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011).

In this case, the orphans' court found that no bond exists between E.P., III and Mother. Orphans' Court Opinion, 3/31/15, at Finding of Fact #320. Rather, the orphans' court found that a bond exists between E.P., III and his foster parents. **Id.** at 321. Therefore, the orphans' court concluded that E.P., III will not be negatively impacted by the termination of Mother's

- 17 -

parental rights. The testimony of Ms. English, the CYS caseworker, during the termination hearing, supports the court's findings. *See* N.T., 2/11/15, at 37, 49-52. As such, we discern no abuse of discretion by the orphans' court in determining that the termination of Mother's parental rights would serve the developmental, physical, and emotional needs and welfare of E.P., III pursuant to Section 2511(b). Mother's first, third, eighth, ninth, and thirteenth issues on appeal are without merit.

Mother notes that the next two arguments in her brief encompass her seventh, tenth, and twelfth questions presented. Mother argues that the orphans' court erred and/or abused its discretion in (1) concluding that CYS met its burden under the Kinship Care Act; and (2) denying the petition to confirm consent of the biological parents to the adoption of Child, filed by R.B. and J.M.

Specifically, Mother argues that, pursuant to 62 P.S. § 1303 (Kinship Care Program), CYS failed to exercise "due diligence to identify and notify all grandparents and other adult relatives … to the parent … within 30 days of the child's removal from the home when temporary legal and physical custody has been transferred to the county agency." Mother's Brief at 22. Further, Mother argues that the orphans' court erred in determining that Mother cannot consent to the adoption of E.P., III by R.B. and J.M. For the following reasons, we conclude Mother's arguments are not properly before this Court.

On May 7, 2014, R.B. and J.M. filed a petition for adoption of E.P., III. Following inquiry and review by the orphans' court, an order was entered on January 16, 2015, denying the adoption petition as follows.

> Upon consideration of [R.B. and J.M.]'s Petition to Confirm Consent of the Biological Parents to the Adoption of the Child and response thereto and the evidence presented at the hearings on September 23, 2014, October 2, 2014, November 20, 2014, and December 11, 2014, it is hereby ORDERED and DECREED that said Petition is DENIED. It is hereby further ORDERED and DECREED that [CYS] met the requirements of the Kinship Care Program Act, 62 P.S. § 1303, in this matter.

Orphans' Court Order, 1/16/15. R.B. and J.M. filed a timely notice of appeal from this order, which they subsequently withdrew. Mother did not file a notice of appeal from the January 16, 2015 order. Therefore, Mother's seventh, tenth, and twelfth questions involve a final order not appealed by Mother. Furthermore, the record belies Mother's contention that CYS did not comply with Section 1303 of the Kinship Care Program as several hearings were held to determine if R.B. and J.M. would be a viable placement. Moreover, her issues pertaining to the adoptive home of E.P., III are not related to the only order on appeal, the involuntary termination of parental rights. As such, we do not review them.

Mother notes that her next argument encompasses her second and eleventh questions presented. Mother argues that the orphans' court erred and/or abused its discretion in finding that CYS proved by "clear and

convincing evidence that it provided reasonable services to Mother when the[]re existed a conflict of interest for CYS[.]" Mother's Brief at 26.

In *In re D.C.D.*, 105 A.3d 662 (Pa. 2014), our Supreme Court considered whether, pursuant to Section 2511(a)(2) of the Adoption Act, the provision of reasonable efforts by the county children's services agency is a factor in the termination of parental rights. The *D.C.D.* Court rejected the argument that an agency must provide reasonable efforts to enable a parent to reunify with a child prior to the termination of parental rights. Further, the Court rejected the argument that Section 2511 of the Adoption Act should be read in conjunction with Section 6351 of the Juvenile Act, particularly section 6351(f)(9)(iii). The *D.C.D.* Court concluded that, while "reasonable efforts may be relevant to a court's consideration of both the grounds for termination and the best interests of the child," an agency's failure to provide reasonable efforts to a parent does not prohibit the court from granting a petition to terminate parental rights under Section 2511. *Id.* at 671-675 (citation omitted). In addition, the Court concluded that reasonable efforts were not required to protect a parent's constitutional right to the care, custody, and control of his or her child. *Id*. at 676–677.

Although the *D.C.D.* Court focused its analysis on Section 2511(a)(2), we conclude that our Supreme Court's reasoning is equally applicable to Section 2511(a)(1). Like Section 2511(a)(2), nothing in the language of Section 2511(a)(1) suggests that reasonable reunification services are

necessary to support the termination of parental rights. As such, we will not disturb the termination order on this basis. Mother's second and eleventh issues fail.

Mother notes that her fourth question presented is encompassed in her final argument in her brief. Mother argues the orphans' court erred in not dismissing CYS's petition to terminate her parental rights because it was not "carried out promptly in accordance with Pa.R.C.P. No. 1915.4 and Pa. O.C. Rules 15.4 - 15.6." Mother's Brief at 30. Mother's argument is without merit.

The plain language of Rule 1915.4 (Prompt Disposition of Custody Cases) reveals that it applies to child custody cases, and not to matters involving the involuntary termination of parental rights. Further, a review of Pa. Supreme Orphan Court Rules 15.4 (Involuntary termination of parental rights), 15.5 (Adoption), and 15.6 (Notice to Persons; Method; Notice of Orphans' Court Proceedings Filed on Dependency Docket) reveals that they do not support Mother's assertion as they do not require the dismissal of an involuntary termination action for failure to promptly list it for trial. Therefore, Mother's final argument fails.

We next turn to Father's issues on appeal. As noted above, Father was incarcerated from February 2012, until May 2013. With respect to Section 2511(a), Father asserts that, while incarcerated, he made efforts "to ascertain through CYS and his family how his child was doing, wrote and

- 21 -

asked for pictures and inquired as to what was being done by [M]other and specifically [Paternal Grandfather] and [Step-Grandmother] who were to take this child upon his release from the hospital after birth." Father's Brief at 8. In addition, Father asserts that, upon his release from prison, he returned to Paternal Grandfather's home and called "the CYS worker 'to talk to her to see what was going on because [Paternal Grandfather] had two of my other children, what I had to do for [E.P., III] to come home....'" *Id.* (citation to record omitted).

In its Rule 1925(a) opinion, the orphans' court set forth the following factual findings in support of its decision.

> Father never made any effort to care for [E.P., III]. The [r]ecord is replete with instances showing that Father did not make himself available for services from CYS. Father did not even attend the Involuntary Termination of Parental Rights hearing in this matter.... English, Father's [CYS] [c]aseworker, testified that Father made it extremely difficult for CYS to contact him upon his release from jail. English testified that when Father was released from jail in May 2013, he did not contact CYS until October 2013. At one point, English had to contact Father's State Probation Officer to try and find him.
>
> [] English further testified that Father never presented himself as a resource for [E.P., III] Father admitted that he never exercised his visitation rights provided to him by CYS. The [r]ecord is extremely clear that CYS tried to provide services to Father, but Father was not interested in taking advantage of such services, including visitation with his own child. Father has not seen his son since February 2012. Father has not seen his child since he was two months old.... Father's own conduct shows that he

> had little or no interest at all being reunited with his
> son…..

Orphans' Court Opinion, 5/28/15, at 60-61 (citations to record omitted).

The testimony of Ms. English, the CYS caseworker, supports the orphans' court's factual findings. To the extent that Father challenges the orphans' court determinations regarding credibility and weight of the evidence, we reject his argument as this Court defers to the orphans' court in that regard. **See T.S.M.**, **supra**. We discern no abuse of discretion by the court in concluding that Father's conduct warrants termination pursuant to Section 2511(a)(1). The record evidence overwhelmingly demonstrates that, for the entirety of E.P., III's life, which is far in excess of the statutory six-month period, Father has evidenced a settled intent to relinquish parental claim to Child or has failed to perform his parental duties to Child.

With respect to Section 2511(b), Father argues that the evidence does not support that terminating his parental rights would serve Child's needs and welfare because a bonding evaluation was not performed regarding E.P., III and Father. However, it is well-settled that the trial court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert. **In re K.K.R.-S**., 958 A.2d 529, 533 (Pa. Super. 2008). Therefore, we reject Father's argument. In addition, there is no evidence of a bond between E.P., III and Father. E.P., III was four years old at the time of the termination hearing, and Father had not seen E.P., III since he was two months old. As such, we conclude the orphans' court did not abuse its

discretion in terminating Father's parental rights pursuant to Section 2511(b).

In Father's second issue, he asserts, like Mother, that the orphans' court erred in determining that CYS met the requirements of the Kinship Care Act, 62 P.S. § 1303. In his third issue, Father asserts, like Mother, that the orphans' court erred in not accepting his consent to the adoption of E.P., III by R.B. and J.M. Father's issues are identical to the issues raised in Mother's appeal, and discussed at length above. As such, we need not repeat our conclusions here. The record demonstrates CYS complied with Section 1303 of the Kinship Care Act, and all issues pertaining to the January 16, 2015 order, discussed *supra* with respect to Mother's appeal are not properly before this Court. Further, any challenges to the adoption of E.P., III are premature at this juncture as these issues are not related to the only order on appeal, that is, the involuntary termination of his parental rights.

In his fourth and final issue, Father asserts, like Mother, that the court erred in not dismissing the involuntary termination action due to the delay in scheduling it for trial. The record reveals that, one week after the termination hearing, on February 18, 2015, Father filed a motion to dismiss the petition for the involuntary termination of his parental rights pursuant to Pa.R.C.P. 1915.4, Orphans' Court Rule 15.6, and ***Dietrich v. Dietrich***, 923 A.2d 461 (Pa. Super. 2007).

As explained with respect to Mother's appeal, the plain language of Rule 1915.4 (Prompt Disposition of Custody Cases) reveals that it applies to child custody cases and not to matters involving the involuntary termination of parental rights. Further, this Court's decision in **Dietrich** involved whether a petition for child custody was subject to dismissal under Rule 1915.4(b). As such, **Dietrich** is inapplicable in this involuntary termination matter. In addition, Pa. Supreme Orphan Court Rule 15.6 (Notice to Persons; Method; Notice of Orphans' Court Proceedings Filed on Dependency Docket) does not support Father's assertion as it does not require the dismissal of an involuntary termination action for failure to promptly list it for trial. Finally, to the extent Father argues that a prompt hearing on an involuntary termination petition is guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution, we are unpersuaded. As Father concedes, "there is no particular statute requiring a hearing date on termination be held within a specific period of time after the filing of the termination petition[.]" Father's Brief at 18. Further, Father notes the orphans' court held hearings on June 26, July 31, September 23, October 2, November 20, and December 14, 2014.[9] **Id.** Therefore, even

_____

[9] Significantly, as the orphans' court noted in its Rule 1925(a) opinion, the delay in this matter was caused by Father and Mother wanting Child to be adopted by R.B. and J.M. Father and Mother executed consents to adoption for this purpose, and, as discussed above, multiple hearings arose as a result. Orphans' Court Opinion, 5/28/15, at 70-71. As such, we conclude
*(Footnote Continued Next Page)*

assuming Father were correct that the Due Process Clause contained such a requirement, Father's final issue nevertheless fails.

Based on the foregoing, we conclude the orphans' court did not abuse its discretion when it involuntarily terminated Mother and Father's parental rights. **See T.S.M.**, **supra**. Accordingly, we affirm the orphans' court's March 31, 2015 orders.

Orders affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2015

---

*(Footnote Continued)* ———————————

that Mother's and Father's issues on appeal are disingenuous with respect to the delay in the involuntary termination proceeding.